RAILROAD COMMISSION OF TEXAS et · al. v. GULF PRODUCTION CO.

No. 8474.

Court of Civil Appeals of Texas. Austin.

March 9, 1938.

Rehearing Denied March 30, 1938.

Dissenting Opinion April 11, 1938.

506

William McCraw, Atty. Gen., and Harry S. Pollard, Asst. Atty. Gen., for appellant Railroad Commission of Texas.

Clyde H. Hall and Campbell & Leak, all of Longview, for appellant J. C. Tippett.

Joe S. Brown and R. F. Carter, both of Houston, and Stanley Hornsby, of Austin, for appellee.

BAUGH, Justice.

This is a rule 37 case. On May 17, 1935, the Railroad Commission granted to J. C. Tippett, lessee, a permit to drill a third well on a 4.77-acre tract of land in the East Texas oil field in Gregg county, as an exception to rule 37 to prevent confiscation. The Gulf Production Company, owner of a lease on adjacent lands to the south, sued to set aside the permit as invalid, to enjoin the drilling of or production from such well, and prayed that the court order the well plugged. Upon a trial to the court on the merits the relief prayed for was granted, from which judgment this appeal is prosecuted.

This is the second appeal in this case. The former appeal was from an order of the trial court dismissing the suit which we reversed upon a confession of error. See Tex.Civ.App., 84 S.W.2d 359. We think the case presents no new questions of law. The tract of land here involved, recovered by the state as vacant land, lease on which is held by Tippett, is 175 feet wide north and south, and 1,187.5 feet long east and west. At the time this permit was granted the leases surrounding this tract were owned and developed as follows: On the south the Gulf Production Company lease of 48.1 acres, drilled to a density of one well to each 6.8 acres; on the east Shell Production Company lease of 47.9 acres drilled to a density of one well to each 7.9 acres; on the north the Tidewater Oil Company lease of 35 acres, drilled to a density of one well

to each 5.8 acres; on the north and west the Hensley-Tom and Sallie Bell lease of an estimated area of 7.8 acres, drilled to a density of one well to each 2.9 acres. The Tippett lease here involved with the two wells thereon, prior to the granting of this permit, was drilled to a density of one well to each 2.38 acres.

In this connection the trial court found, in response to appellee Tippett's request for findings of fact, as follows:

"That J. C. Tippett's wells Nos. 1 and 2 as located on his Acklin and Mary Nichols lease, had on said date, and now have, drainage advantage over the adjacent leases; that said two wells were and are permitted to produce a daily allowable of approximately 8.51 barrels of petroleum oil to each acre of leasehold estate; that Gulf Production Company's wells were and are permitted to produce a daily allowable of approximately 2.91 barrels for each acre of its leasehold estate; that the H. C. Hensley Tom Bell 'B' lease next adjoining J. C. Tippett's lease on the North, was and is permitted to produce a daily allowable of approximately 7.7 barrels of petroleum oil and gas for each acre of leasehold estate, and that the Tidewater's Tom Bell lease next immediately North of the H. C. Hensley Tom Bell 'B' lease and North of the said J. C. Tippett's lease, was and is permitted to produce approximately 3.42 barrels of petroleum oil for each acre of leasehold estate, thus affording the said J. C. Tippett a daily allowable of approximately four barrels per acre over and above the average barrels per acre allowable of said four leases; that if the J. C. Tippett well No. 3 here complained of shall be permitted to produce under the present allowable, production from the three wells on the J. C. Tippett lease will aggregate 12.7 barrels per acre of leasehold estate, or 8.2 barrels per acre per day in excess of the average daily allowable permitted said four leasehold estates.

"The third well here complained of was not necessary to prevent confiscation of J. C. Tippett's property nor to prevent waste, but, on the contrary, if permitted to produce petroleum oil and gas, it will tend to, and will, create or occasion waste of petroleum oil and gas."

Only two witnesses testified in the trial upon the issues here presented, R. D. Parker and J. S. Hudnall, both as expert petroleum engineers. Both testified that under the conditions on the surrounding leases at the time the permit was granted, a third well was not needed to prevent confiscation of Tippett's property. On the contrary, it was shown that his tract had a drainage advantage over surrounding leases without the additional well. It was not shown whether these witnesses testified in the hearing before the Railroad Commission or not. The only ground, therefore, on which it was attempted to sustain the permit was that it was necessary to prevent physical waste, which was not the ground recited in the order of the commission granting it. On that issue, Parker testified that it was not only not necessary to prevent waste, but that it would cause waste and drain oil from underneath appellee's lease. Hudnall testified that it was needed to prevent waste. This opinion, however, he admitted upon cross-examination, was predicated upon his disagreement with the wisdom and efficacy of the 660-330 feet spacing provisions of rule 37; and his belief that the more wells that are drilled on a given area, the greater will be the ultimate recovery of oil therefrom. That consequently, in order to prevent waste, the surrounding leases regardless of size should be drilled to a greater density than the spacing provisions of rule 37 permit.

The same character of testimony by the same witness was before us in Railroad Commission v. Marathon Oil Co., Tex.Civ. App., 89 S.W.2d 517, writ refused, wherein we held that it amounted to a collateral attack upon the validity of rule 37, and was entitled to no weight as a basis of support to an exception to the rule.

It is now settled that a lessee is entitled only to an equal opportunity with the lessees of adjacent lands to recover his fair share of the oil in place beneath his tract; and when he is enabled to do so, the requirements of the law and the commission's rule to protect him against confiscation have been met. Railroad Commission v. Marathon Oil Co., supra; Edgar v. Stanolind Oil & Gas Co., Tex.Civ.App., 90 S. W.2d 656, writ refused; Arkansas Fuel Oil Co. v. Reprimo Oil Co., Tex.Civ.App., 91 S.W.2d 381; Empire Gas & Fuel Co. v. Railroad Commission, Tex.Civ.App., 94 S. W.2d 1240, writ refused. The uncontroverted evidence in the instant case showed that at the time this permit was granted, Tippett had such opportunity without a third well on his tract.

■ The Railroad Commission also contends that appellee, Gulf Production Company, did not show itself to be "an interested person affected by" the permit here involved; within the meaning of the amended statute, article 6049c, section 8, Vernon's Ann.Civ.St., authorizing it to attack the permit. This, contention is not sustained. Of the two wells on Tippett's tract, one was 50 feet and the other 87.5 feet from the line of the Gulf's lease. Whereas, of the two wells on the Gulf lease, south of these two wells, one was 183 feet and the other 141 feet from Tippett's line, thus giving Tippett a clear drainage advantage on that side of his tract. The third well granted thereon was located 87.5 feet from the Gulf's line, thus increasing the drainage from the Gulf lease. Manifestly, the Gulf was affected by such permit within the meaning of the statute. Empire Gas & Fuel Co. v. Railroad Commission, Tex.Civ.App., 94 S.W. 2d 1240, writ refused; Murphy v. Turman Oil Co., Tex.Civ.App., 97 S.W.2d 485, writ refused 300 U.S. 685, 57 S.Ct. 752, 81 L.Ed. 887.

■ Appellant Tippett in a separate brief filed herein also makes the contention that under article 4644, R.S., it was incumbent upon appellee to allege and prove, before injunctive relief would lie, that he was unable to respond in damages. This exact contention was overruled by us in Humble Oil & Refining Co. v. Railroad Comm., 85 S.W.2d 813, and in Edgar v. Stanolind Oil & Gas Co., Tex.Civ.App., 90 S.W.2d 656, writ refused, and need not be further discussed here.

The Railroad Commission also complains of that portion of the trial court's judgment ordering the well plugged; as an invasion of the administrative function of the Railroad Commission. While we have passed on this issue generally adversely to this contention, see Turnbow v. Barnsdall Oil Co., Tex.Civ.App., 99 S.W. 2d 1096, writ refused, we have concluded that under the facts and circumstances shown by the record, that this portion of the trial court's judgment should be set aside.

■ The permit here involved was granted on May 17, 1935. This case was tried in November, 1935. The evidence discloses that conditions in this area had substantially changed between the granting of the permit and the time of the trial.

Many of the facts as to density of drilling in this particular area urged by appellants as supporting the permit arose after the granting of the permit and before the trial. That is, additional wells were drilled or permits for same granted in the vicinity of Tippett's tract of land after the permit here involved was granted. It is now settled, however, in testing the validity of such a permit, on an appeal to the court, the court in doing so is confined to the conditions as they existed at the time the commission acted. Railroad Commission v. Magnolia Petroleum Co., Tex.Sup., 109 S.W.2d 967; Magnolia Petroleum Co. v. New Process Prod. Co., Tex.Sup., 104 S.W.2d 1106. And the fact that such an order of the commission has been either sustained or stricken down by the courts as invalid does not bar the applicant from again applying to the commission for, or from securing from it, such order or permit as, in the judgment of the commission, changed conditions or the circumstances may warrant.

■ We are not called upon to decide whether, under conditions brought into existence after the permit here involved was granted, Tippett may, at the time of the trial hereof, or now, have been entitled to a third well on his tract. That matter necessarily reverts to the commission. In view of these facts, however, and notwithstanding the fact that the commission, as the trial court held, exceeded its authority in granting said permit under the conditions then existing; it would seem a harsh burden to compel him to plug a well drilled thereunder, if under such changed conditions he might now show himself entitled to it.

That part of the trial court's judgment ordering and directing appellant Tippett to plug said well is therefore set aside; but the trial court's judgment is in all other respects affirmed, without prejudice, however, to any rights of J. C. Tippett to again apply to the Railroad Commission for any such order in the premises as he may show himself entitled to.

Set aside in part and in part affirmed.

BLAIR, Justice. (dissenting).

I disagree with the majority view in the application of the settled law to the facts of the instant case; and regard the majority view as being in conflict with the recently decided rule 37 cases, particularly

Magnolia Petroleum Co. v. Railroad Commission, Tex.Sup., 109 S.W.2d 967; Humble Oil & Refining Co. v. Railroad Commission, Brown Case, Tex.Civ.App., 112 S.W.2d 222, writ dismissed; and Smith County Oil & Gas Co. v. Humble Oil & Refining Co., Tex.Civ.App., 112 S.W.2d 220, both in respect to the proper interpretation of rule 37, and in respect to the scope or extent of a judicial review of an order of the commission granting a permit to drill an oil well under the exceptions to prevent confiscation, or to prevent physical waste of the oil. In the instant case the commission granted Tippett a permit to drill a third well on his 4.77-acre tract of land; the order reciting that the well was necessary to prevent the confiscation of his property; and in this proceeding to set aside the order, both Tippett and the commission contend that the well was authorized upon two grounds: (1) To prevent confiscation of Tippett's oil; (2) to prevent physical waste of oil which would result by leaving recoverable oil in the ground underneath the tract by failure to drill the well in question.

The first ground for granting the permit relates to the private rights of Tippett to secure the greatest benefit or use of his property; and which rights are limited only by a lawful application of the oil and gas conservation laws. The evidence on this ground showed that the area eight times the size of the Tippett 4.77-acre tract, and immediately surrounding it, had been drilled to a density of one well to each 1.66 acres; that with the third well the 4.77-acre tract was drilled to a density of one well to each 1.59 acres; and that if the third well were not drilled, the 4.77-acre tract had a density of only one well to 2.38 acres; and was therefore at a disadvantage in comparison with the area eight times the size of and immediately surrounding it. This evidence brings the instant case clearly within the rule announced in such cases as Sun Oil Co. v. Gillespie, Tex.Civ.App., 85 S.W.2d 652, and Atlantic Oil Producing Company v. Railroad Commission, Tex.Civ.App., 85 S.W.2d 655, and Smith County Oil & Gas Co. v. Humble Oil & Refining Co., supra, which used the density theory to determine the question; and wherein it is held that the commission must authorize the drilling of an oil well as an exception to rule 37 where it is necessary in order to accord to the owner his inherent right to his fair share of the oil, or to accord to him a fair opportunity to drill sufficient wells to obtain his fair share of the oil in the common pool, and thus prevent confiscation of his property.

In this connection, however, the majority view found that expert witnesses Parker and Hudnall both testified that in their opinion the third well on the 4.77-acre tract was not necessary in order to prevent the confiscation of the oil of Tippett. This finding must be qualified by the testimony of these witnesses on cross-examination. Parker made no investigation on the ground of the conditions surrounding the Tippett 4.77-acre tract, but predicated his opinion on maps, plats, and records, and admitted that he was testifying that from an "economic" standpoint rule 37 was a fair or proper rule for spacing oil wells. He further testified that even from an economic standpoint one well to 6 or 8 acres is required to obtain the greatest ultimate economic recovery of oil; and that a greater percentage of recovery is obtained by drilling wells more closely; that it took more reservoir energy to move oil over a long distance than over a short distance; that where such energy is lost oil will be left in place in the structure; and that loss of such reservoir energy is waste.

On cross-examination, Hudnall, a petroleum engineer, who went on the ground and made his investigation of the Tippett tract, testified in answer to particular question asked that the third well on the Tippett tract was not necessary to prevent confiscation; but that such opinion was based upon a well for well distance comparison only, and excluded from consideration the density of wells as they actually existed. He further explained that the field had been developed under the denser drilling rule of the commission; and that such being true, the third well on the Tippett tract was "absolutely necessary." Manifestly, the opinion of the expert witness attacking the order was not such clear and satisfactory proof as would overturn the finding of the commission which granted the permit after a full hearing of the matter and had before it all of the conditions surrounding the tract in question, knew how many wells had been drilled in that vicinity, knew what future development might be needed, knew all conditions as to the location of the well on the west side of the field, and knew of all matters concerning reservoir pressure or energy surrounding the land, and was under duty

of developing the field and the particular territory so as to afford the owners of lands or oil therein a fair and equal opportunity to recover their fair share of the oil in the pool, and so as to prevent physical waste of oil in any manner, and to obtain the greatest ultimate recovery of oil from any given pool or area.

The second ground authorizing the drilling of the well in question in order to prevent physical waste of oil under the 4.77-acre tract which would result from leaving recoverable oil in the ground if the well were not drilled relates primarily to the public interest to secure the greatest ultimate recovery of oil from any pool or area, thus conserving this natural resource for the ultimate use and benefit of the public; and the conservation statutes particularly enjoin upon the commission alone the duty of protecting this interest of the public in oil. Magnolia Petroleum Co. v. Edgar, Tex.Civ.App., 62 S.W.2d 359, writ refused. As reason for declaring the order of the commission granting the third well on the 4.77-acre tract to prevent physical waste of oil invalid, the majority view predicated its opinion upon the following finding of fact and interpretation of rule 37:

"On that issue, Parker testified that it was not only not necessary to prevent waste, but that it would cause waste and drain oil from underneath appellee's lease. Hudnall testified that it was needed to prevent waste."

Hudnall's testimony was sought to be qualified by the majority view as follows:

"This opinion [Hudnall's], however, he admitted upon cross-examination, was predicated upon his disagreement with the wisdom and efficacy of the 660-330 feet spacing provisions of rule 37; and his belief that the more wells that are drilled on a given area, the greater will be the ultimate recovery of oil therefrom. That consequently, in order to prevent waste, the surrounding leases regardless of size should be drilled to a greater density than the spacing provisions of rule 37 permit."

This qualification of Hudnall's testimony is erroneous for two reasons: In the first place, the majority view has clearly misconstrued the testimony of Hudnall as disagreeing "with the wisdom and efficacy of the 660-330 feet spacing provisions of rule 37." On cross-examination he testified as follows: "Q. You do not agree with Rule 37? A. I agree with it in this respect,—it brings about uniform spacing which is a conservation measure."

He further testified that none of the wells surrounding the 4.77-acre tract had been drilled in accordance with the 660-330 spacing provisions of the rule; but that the area had been densely drilled under the finding of the commission that more wells drilled and spaced uniformly would bring about a greater ultimate recovery of oil in the area. He further testified that the particular area was near the west side of the field and would not produce as long as the average area in the field. He further testified that considering the density of drilling on the surrounding area, and considering rule 37 as a reasonable rule, and that the area has been and was going to be developed in cognizance of the commission's denser theory of drilling interpretation and application of the rule, the third well on the 4.77-acre tract was "absolutely necessary" in order to prevent physical waste.

In the second place, the conclusion of the majority view that Hudnall's testimony "was predicated upon his disagreement with the wisdom and efficacy of the 660-330 feet spacing provisions of rule 37; and his belief that the more wells that are drilled on a given area, the greater will be the ultimate recovery of oil therefrom," is erroneous because the most that can be found in Hudnall's testimony is that he construed the action of the commission in developing the area as placing that interpretation on the rule 37, and predicated his testimony upon the belief that the field had been and was going to be further developed in accordance with that interpretation of its rule by the commission. And this finding or conclusion of the majority view is merely its own interpretation of rule 37, which it has continuously sought to invoke in several rule 37 cases and to the effect that the 660-330 feet spacing provision of the rule constituted an authoritative official finding by the commission that wells drilled in closer proximity, producing equally, would tend to create waste of oil. This exact interpretation of the rule by the majority view was expressly overruled by the Supreme Court in the case of Railroad Commission v. Magnolia Petroleum Company, 109 S.W.2d 967, 971, wherein the court held that "this order of the Railroad Commission was not overborne by any

presumption, real or supposed, that followed the enactment of rule 37." And after quoting the entire rule 37 applicable to the East Texas field, the court further held that "by its language the rule is cast into two distinct parts. The first deals with a spacing pattern for the entire field and for wells generally; the second, with specific wells, to be drilled as exceptions to the general rule. These two parts compose the entire rule, the one as much as the other, and must be considered together."

The same majority view interpretation of rule 37 was urged both in this court and on application for writ of error to the Supreme Court in the Brown Case, supra, and was by both courts overruled. In the Brown Case the Humble Company objected to the testimony of expert witnesses Hudnall and Griffin to the effect that an increased recovery of oil in the East Texas field would be obtained through drilling of additional wells spaced closer together than provided for in the rule, upon the ground that such testimony was based upon the opinion of the witnesses that the spacing distances prescribed in the rule were improper and was in effect a collateral attack upon the wisdom and efficacy of rule 37. This court overruled these contentions and by several assignments in its application for writ of error the Humble Company complained of this action, and by dismissing the application for writ of error the Supreme Court overruled the assignments. The majority view is therefore clearly in conflict with these recently decided rule 37 cases.

When stripped of this erroneous interpretation of rule 37, there remains of the above-quoted portion of the majority opinion only the finding that witness Parker gave as his opinion that the drilling of the well would tend to cause waste of oil, which he qualified as being based upon economic instead of physical waste; and that witness Hudnall gave as his opinion that, in view of the fact that the particular area had been developed in accordance with the denser drilling theory of the commission and the conditions surrounding the tract, the drilling of the well was necessary to prevent physical waste of oil which would be otherwise left in the ground. Considered in the most favorable light, this testimony presents the qualified and conflicting views or opinions of two expert witnesses as to the validity of the order of the commission granting the permit to drill the oil well under the valid exceptions to the general spacing provision of rule 37. And if the opinion of the expert witness who attacked the order is not a collateral attack upon it, the commission having after repeated hearings found that more wells drilled in accordance with substantial uniform spacing the more oil will be recovered from any given pool or area, and the undisputed facts showing that the commission had developed the area involved in accordance with that interpretation and application of the rule, then the opinion of said expert witness is not such clear and satisfactory evidence as would authorize any court to set aside the prima facie valid order granting the permit to drill the well in question. And if the majority view has so held independently of its aforementioned erroneous interpretation of rule 37, then its view is clearly in conflict not only with the rule 37 cases determining the question, but its view is also in conflict with the uniform decisions of the courts of this state with respect to the scope or extent of a judicial review of an order or rule of an administrative board or commission. Briefly, they hold that an order or rule of an administrative board or commission is presumed to be valid; that it is subject to statutory court review to determine whether it is unjust or unreasonable to the complaining party, and subject to the inherent power of the court to determine whether it infringes upon constitutional rights of the complaining party; that the party complaining must show by clear and satisfactory proof the particular ground or reason why the order or rule is unjust or unreasonable as to him, or in what particular it infringes upon his constitutional rights; that such complaining party does not show by clear and satisfactory evidence the invalidity of the order or rule by merely presenting expert testimony in conflict with the finding of the order, or by presenting evidence with respect to which reasonable minds may differ; but he must go further and show by clear and satisfactory evidence, "which leaves no reasonable doubt in the judicial mind that the order is" unjust and unreasonable, or confiscatory of property as the case may be. Railroad Commission v. Galveston Chamber of Commerce, 105 Tex. 101, 145 S.W.

573; Railroad Commission of Texas v. Weld & Neville, 96 Tex. 394, 73 S.W. 529; State v. Lone Star Gas Co., Tex. Civ.App., 86 S.W.2d 484, error refused; United Gas Public Service Co. v. State, Tex.Civ.App., 89 S.W.2d 1094, writ refused by the Supreme Court of Texas and the judgment affirmed by the Supreme Court of the United States, 58 S.Ct. 483, 82 L.Ed. ——; Missouri-K. & T. Ry. Co. v. Railroad Commission, Tex.Civ.App., 3 S.W.2d 489, affirmed by Commission of Appeals, Producers' Refining Co. v. Missouri, K. & T. R. Co., 13 S.W.2d 679, and Railroad Commission v. Shuppee, Tex. Civ.App., 57 S.W.2d 295, affirmed by Supreme Court, 123 Tex. 521, 73 S.W.2d 505; Texas Motor Coaches v. Railroad Commission, 123 Tex. 517, 73 S.W.2d 511, Texas & Pacific Transp. Co. v. R. R. Comm., 124 Tex. 126, 73 S.W.2d 509.

If the statement in the majority opinion calling attention to the fact that the order granting the permit to drill the well did not recite that it was granted to prevent physical waste of oil is meant as a holding that such permit order should have so recited, then the holding is clearly in conflict with the numerous decisions of this court and particularly with the decision of the Supreme Court in the case of Railroad Commission v. Magnolia Petroleum Company, supra, wherein the court said: "Nor do we measure the validity of its order by the reason it gives for same." The matter of preventing physical waste of oil relates primarily to the interest of the public in the proper conservation of oil; and obviously a recitation of the fact that the commission has so acted to protect that interest, has no place in an order granting a permit to a person to drill an oil well on his property under the exception to the general provisions of the spacing rule to prevent confiscation of property.

The particular order complained of here should have been sustained in all things.