**ATLANTIC REFINING CO. et al. v. GULF LAND CO. et al.**

No. 8756.

Court of Civil Appeals of Texas. Austin.

June 1, 1938.

Rehearing Overruled Nov. 30, 1938.

Dissenting Opinion Dec. 2, 1938.

Railroad Commission on July 29, 1936, to the Gulf Land Company to drill a second well on its 2.35-acre tract of land in the East Texas field in Gregg County, as an exception to rule 37, recited to be necessary to prevent confiscation of property.

The following material facts are uncontroverted: When oil was discovered in the East Texas field one W. Smith owned in fee 128 acres of land, including that here involved. On January 28, 1931, he leased a 43-acre tract out of this 128 acres to G. T. Hudson et al., which 43-acre tract was subsequently subdivided into other tracts, one of which was a tract containing 6.88 acres, in the form of a right angle triangle, the base line of which was approximately 1030 feet long, running east and west; the perpendicular, which constituted the east side of the triangle, being 562 feet; the hypotenuse of which triangle was the common boundary line between said 6.88-acre triangular tract and a 40-acre lease owned by the Atlantic to the north.

At the time of this 6.88-acre triangular subdivision in March, 1931, the spacing provisions of rule 37 were 150–300 feet, and under them said 6.88-acre triangular tract was capable of development as a whole without necessity for an exception to rule 37. On February 25, 1932, rule 37 was amended by the Railroad Commission and its spacing distances increased to 330–660 feet. After this was done, and prior to the application for the permit here involved was made, this 6.88-acre tract was subdivided into six small tracts, four of which contained less than 1 acre each, one contained 1.46 acres, and the one here involved, located north and south across and near the center of said triangular tract, contained 2.35 acres. Near the center of each of these six subdivided tracts was drilled one well, or six wells on the 6.88-acre tract. This constituted development to a greater density on this triangular tract than that prevailing on eight times the surrounding area, delineated either in circular shape or by eight triangles of similar shape and dimension.

On June 8, 1934, the Gulf Land Company, owner of the 2.35-acre lease, near the center of which it then had one producing well, applied to the Commission for a second well thereon. This application was denied by the Commission, the finding of the examiner being that the 2.35 acres was a voluntary subdivision and that no additional well was needed on the 6.88-acre tract,

Powell, Wirtz, Rauhut & Gideon and C. B. Jeffrey, all of Austin, for appellant Hawkeye Petroleum Corporation.

C. B. Ellard, of Dallas, Black, Graves & Stayton, of Austin, for appellant Atlantic Refining Co.

Wm. McCraw, Atty. Gen., Harry S. Pollard and Charles Rutta, Asst. Attys. Gen., for appellee Railroad Commission of Texas.

W. B. Harrell, of Dallas, and Henry H. Brooks, of Austin, for appellee Gulf Land Co.

BAUGH, Justice.

This is a rule 37 case. Appeal is from a judgment of the District Court refusing to set aside as invalid a permit granted by the

out of which it was carved, to prevent drainage of the larger tract. On April 29, 1935, the Gulf Land Company again applied to the Commission for two additional wells on this 2.35-acre tract. At that time the map filed by the Gulf Land Company showed that the 6.88-acre tract had six wells on it. This application was denied on May 29, 1935. Thirteen months thereafter, on June 29, 1936, the Gulf Land Company filed a motion for rehearing on said application, to which was attached a map or plat showing the same conditions as to wells on this and the surrounding tracts as shown on its 1935 application. This motion was granted and on July 29, 1936, the permit for one well, the one here under attack, was granted. This was done notwithstanding its prior order that such subdivisions would not be considered in granting exceptions; and its further promulgated rule that such motions for rehearing would not be considered unless filed within 20 days after such order shall have been entered of record.

It may be observed that two denials by the Commission of any additional well on the 2.35-acre tract, on the ground that it was a voluntary subdivision, and that no additional wells on the 6.88-acre tract were necessary to prevent confiscation as to the larger tract, constituted, at least, an implied finding by the Commission that the wells applied for were not necessary to prevent waste. And, further, that Gulf Land Company's motion for a rehearing shows the same number and location of wells in this area as did its original application. That is, so far as density and location of wells were concerned, it negatived, rather than showed, any changed condition.

 From the facts stated it is manifest that Gulf Land Company obtained no vested right to an additional exception to rule 37 to protect its 2.35-acre tract from drainage. It is now settled that one acquiring land or a leasehold estate therein must contract with reference to, and not so as to necessitate an exception to, rule 37, in order to secure a vested right which he is entitled to have protected. Sun Oil Company v. Railroad Commission, Tex.Civ. App., 68 S.W.2d 609; Railroad Commission v. Magnolia Pet. Co., Tex.Sup., 109 S. W.2d 967. It is also true that such right is determinable by the provisions of the rule at the time he in good faith acquires such leasehold estate, and not by subse-

quent amendments thereto increasing such spacing distances. Humble Oil & Ref. Co. v. Railroad Commission, Tex.Civ.App., 94 S.W.2d 1197, writ refused. At the time the 6.88-acre tract was subdivided from the 43-acre tract the spacing provisions of rule 37 were 150–300 feet, and said 6.88-acre tract was capable of development as a whole under said rule without exceptions thereto. At the time the 2.35-acre tract here involved was subdivided therefrom these spacing provisions were, and for several months prior thereto had been, 330–660 feet. The Gulf Land Company was charged with notice, when it acquired its leasehold, that such tract could not be developed without an exception to said rule, and consequently acquired no vested right to such an exception to prevent drainage. The well here involved not only required an exception to the 330–660-foot spacings, but would also have required an exception to the 150-300 spacings. That being true, under the application of the subdivision rule as made in the Century Case (Railroad Commission v. Magnolia Pet. Co., Tex.Sup., 109 S.W.2d 967), the Gulf Land Company's rights to such permit are referable to the 6.88-acre tract treated as a unit.

Appellee Gulf Land Company urges that in applying the subdivision rule under the Century Case, the 6.88-acre tract is referable to the original 128 acres owned in fee by Smith; that appellant failed to show that said 128 acres was not entitled to an additional well; and that it therefore failed to overcome the presumption of validity of the Commission's order granting said permit. Manifestly this contention cannot be sustained. The original 128 acres was not leased as a whole. The tracts into which it was originally subdivided were all of such size and dimensions as to be capable of development without exceptions to rule 37. The subdivision of the 128 acres from which the 6.88 acres was later subdivided was a 43-acre tract capable of development as a whole without exceptions to the rule. So was the 6.88-acre tract at the time it was segregated therefrom. In applying the voluntary segregation rule, therefore, applicable to Gulf Land Company's tract, inquiry need extend no further than to the tract which was capable of development as a whole without exception from which it was segregated.

 When so considered the 6.88-acre tract was shown not to need the additional

well either to adequately develop it or to prevent drainage. As above stated, with six wells already drilled on it, it had a greater density per acre than the surrounding area. The uncontradicted evidence showed that underground conditions as to sand thickness, porosity, permeability, and pressure were uniform throughout this area; that the hourly potential of wells and the daily allowable fixed by the Commission for wells on this 6.88-acre tract and throughout the eight times area surrounding it were practically identical. In addition to the above, the only petroleum engineer who testified, and whose qualifications as an expert are not questioned, showed that from his own tests, experience, and records made by him, and from those of the Railroad Commission, he was familiar with underground conditions prevailing in this particular area, and testified that drainage to this 6.88-acre tract, with six wells on it, was greater than the drainage from it by surrounding wells.

On the issue of waste prevention, in addition to the facts in evidence above stated, the maps and plats showing density and location of wells, the petroleum engineer for the Atlantic testified at length both on direct and cross-examination, going into detail as to waste caused by dense drilling in a localized area, where underground conditions and per well allowable are uniform, as was true here. He testified that localized density caused lowering of pressure therein and brought increased water encroachment. Not only this but tests made in wells on the Atlantic's lease adjacent to this tract on the northwest, the direction from which the water table approached, showed that because of the density in the immediate area here involved, and the low pressure area produced thereby, water encroachment was "fingering" towards this area across the Atlantic's lease in advance of the general approach from that direction of the water table generally. In brief, that under the factual conditions disclosed by known data in existing wells, the density on the 6.88-acre tract, with wells already on it, was occasioning actual physical waste, which in witness' opinion would be increased by the additional well. Under these facts and circumstances, the rule reiterated and discussed fully in Stanolind Oil & Gas Co. v. Midas Oil Co., 123 S.W.2d 911, and the fact that neither the Railroad Commission

nor Gulf Land Company offered any evidence to the contrary, were clearly sufficient, we think, not only to rebut the presumptive validity of the permit as necessary to prevent waste; but to show that waste would result from the drilling of the additional or seventh well on said 6.88-acre tract.

The remaining contention, made by appellee Gulf Land Company, relates to the admission in evidence of a map showing the entire 128-acre Smith tract, and an area eight times said tract, with location of lease lines and wells located thereon as of July 20, 1936, the date of the hearing before the Commission upon which the permit was granted. This map was prepared by R. D. Parker, former oil and gas supervisor for the Commission, from the records of the Commission and the sworn data as to well locations on file with the Commission, and which constituted its official records. Objection was made to its introduction in evidence on the grounds, among others, that the data on file with the Commission was but ex parte sworn statements of third parties, not parties to this suit; that such affidavits, reports, and maps so filed by others were but hearsay and not admissible against appellees; that, therefore, a map made from such verified reports, etc., would not be admissible in evidence; and that consequently, without such map, or if it were excluded as appellee contends that it should be, appellants wholly failed to discharge the burden cast upon them to show the invalidity of said permit.

Appellee Gulf Land Company relies in the main on the case of Crosby v. Ardoin, Tex.Civ.App., 145 S.W. 709, writ refused, and Dunn v. Land, Tex.Civ.App., 193 S.W. 698. The former case involved an affidavit filed with the General Land Commissioner reciting the loss of land certificate (which was later produced), on which affidavit duplicate certificate was issued, and the land patented. The original certificate later appeared in the hands of a third party with a conveyance thereof from the original holder; and the controversy was between the respective parties over title to the land. The latter case involved the admissibility in evidence in a title suit of data from a memorandum book of a county surveyor.

■■ It is clear, we think, that these cases do not apply to the issue raised here. No title to the lands nor the leasehold es-

tates is here involved. Ownership of the respective tracts and leasehold estates is not controverted. The witness Parker testified that the map prepared by him correctly reflected the number and location of wells as shown by the records of the Commission, which consisted of reports and maps verified under oath by the parties affected. Art. 6029, Sec. 7, R.S., as amended, Vernon's Ann.Civ.St. art. 6029, subd. (7), authorizes the Commission to make and enforce rules and regulations to prevent waste and "to require records to be kept and reports made." Art. 6036 prescribes a penalty for violations of such rules, etc. The rules of the Commission require such sworn reports to be made. When made they become a part of the records of the Commission. The only issue here involved was as to the reasonableness, etc., of an order of the Commission, in no wise involving title, which order in large measure, no doubt, was predicated upon facts shown by these very records. It is too clear for argument, we think, that one attacking such order is entitled to rely upon and introduce in evidence facts disclosed by the records of the Commission upon which it had acted, in part at least, in issuing such order. We do not understand appellees to object to said map on the grounds that it does not truly reflect the records of the Commission, but on the grounds that the data on file with the Commission from which the map was prepared, would not be admissible. This contention is consequently not sustained. In no event could appellees complain as to the wells on the 6.88-acre tract and the surrounding offset wells thereto, because the map of the Gulf Land Company itself, accompanying its application for the permit, showed them to be the same in number and in substantially the same locations as did the larger map complained of.

For the reasons above stated the permit attacked herein is declared invalid, the judgment of the trial court sustaining it is reversed and here rendered to that extent. Otherwise such judgment is reversed and the cause remanded to the trial court with instructions to grant such ancillary relief as may be appropriate.

Reversed and rendered in part, and in part reversed and remanded with instructions.

McCLENDON, C.J., concurs.

BLAIR, J., reserves decision.

BLAIR, Justice (dissenting).

The writer again dissents from the majority interpretation of Rule 37 as being a fact finding by the Commission that wells drilled closer than 660 feet will cause physical waste of oil. Such interpretation was made in the Sun Case, Sun Oil Co. v. Railroad Commission, Tex.Civ.App., 68 S.W.2d 609; the Atlantic Case, Atlantic Oil Production Co. v. Railroad Commission, Tex. Civ.App., 85 S.W.2d 655; the Marathon Case, Railroad Commission v. Marathon Oil Co., Tex.Civ.App., 89 S.W.2d 517; the Magnolia Case, Magnolia Pet. Co. v. Railroad Commission, Tex.Civ.App., 105 S.W. 2d 787, and is in effect reiterated in the instant case, notwithstanding the Supreme Court expressly overruled the majority interpretation in the Magnolia Case, Railroad Commission v. Magnolia Pet. Co., 109 S.W. 2d 967. The Supreme Court has also recently granted a writ of error in the Gulf Case, Railroad Commission v. Gulf Production Co., Tex.Civ.App., 115 S.W.2d 505, wherein the majority adhere to their former interpretation of the rule; still the majority persist in making the same interpretation in the instant and other recent cases.

By its order of August 26, 1935, the Commission took direct issue with the majority interpretation of Rule 37, declared that it had never interpreted nor intended the rule as a fact finding that wells drilled closer than the spacing distances therein prescribed would cause waste of oil and gas. The Commission further expressly found upon evidence adduced at its many hearings and from its actual experience, and through its experts continuously employed in the administration of the rule, that the closer wells are drilled the greater will be the ultimate recovery of oil and gas from any area so drilled, provided the wells produce equally; and closer spacing is accomplished through the application of the exception to the general rule to prevent waste, or to prevent confiscation. If more oil will be recovered from denser drilling, then failure to so drill will necessarily result in waste of oil and gas left in the ground; and in consequence will also result in confiscation of the oil through failure to enforce the exceptions to the rule so as to recover the greatest amount of oil under any given tract of land or area.

The Commission has developed the East Texas Oil Field in accordance with its aforementioned findings of fact and its in-

terpretation of its own rule to such an extent that only a few of the approximately 25,000 wells are spaced in accordance with the general distances prescribed by the rule. Of those facts and interpretation by the Commission the oil industry may take notice and contract accordingly. That is, if those engaged in the industry are required to take notice of Rule 37 in making and developing oil leases, then equity and fair dealing require that they may also take notice of the interpretation placed on the rule by the Commission and the manner of its enforcement of the rule and the exceptions. (The writer's views with respect to the majority interpretation of Rule 37 are expressed by dissenting opinions in the Magnolia Case, Tex.Civ.App., 105 S.W.2d 792; the Gulf Case, Tex.Civ.App., 115 S.W.2d 508, writ granted on the dissent; the Magnolia Case, Tex.Civ.App., 120 S.W.2d 548; Id., Tex.Civ.App., 120 S.W.2d 552, and the Tide Water Case, Tex.Civ.App., 120 S.W.2d 548, which are here referred to.)

The majority necessarily struck down the permit to drill the well in question under their aforementioned interpretation of the rule, because the evidence upon which they base their decision is but a collateral attack upon the order of August 26, 1935, and the official fact findings therein stated, and which evidence is not sufficient in any event to overcome the prima facie validity of the permit in question, nor the judgment by the trial court sustaining the permit.

The majority opinion is based in the main upon the testimony of one expert witness of appellants, who testified in substance that, in his opinion, the well in question was not necessary to prevent waste; that water encroachment was "fingering" toward the well, because of density of drilling in that area; and that a map showing well locations on adjoining tracts showed that the well was not necessary under a per acre density comparison.

The testimony with respect to water encroachment as the result of density of drilling in the area of the well is merely a collateral attack upon all wells drilled in the area, and over the drilling of which appellee has no control. The testimony of this expert witness is in direct conflict with the finding of the Commission that the well is necessary to prevent waste of oil.

The density of drilling map was not prepared from any actual location of wells on the ground, but from affidavits filed by appellants and others with the Commission, and which were put in evidence over the objection of appellee that same were hearsay. They were so and should have been excluded. Crosby v. Ardoin, Tex.Civ.App., 145 S.W. 709, error refused; Dunn v. Land, Tex.Civ.App., 193 S.W. 698; Beglin v. Metropolitan Life Ins. Co., 173 N.Y. 374, 66 N.E. 102.

As against the prima facie validity of the order granting the permit to drill the well in question the aforementioned evidence will not suffice; nor is it sufficient to set aside the judgment of the trial court holding the permit valid. If appellants may attack the permit at all, they must at least allege and prove facts which would clearly and satisfactorily show that the well was not necessary to prevent waste; that the additional well was not necessary in order to accord to the appellee its fair share of oil under its land in accordance with the density of drilling rule; and to further allege and prove that because of the well they are not getting their fair share of recoverable oil under their lands. In the absence of such proof it must be assumed in support of the validity of the order of the Commission that it knew how many wells had been drilled in the particular area; knew all conditions as to water encroachment and well locations in the area; knew all conditions of drainage; and knew all matters pertaining to and surrounding the lands in the area. Railroad Commission v. Magnolia Pet. Co., Tex.Sup., 109 S.W.2d 967.

The voluntary subdivision rule as heretofore announced by this and the Supreme Court and as herein invoked by the majority has no application to the instant case, because under the undisputed facts, and in accordance with the presumption of validity accorded the permit, it may be assumed that the well in question was not granted to protect the 2.35-acre tract as the result of any condition existing at the time it was subdivided from the 6.88-acre tract in 1932; but became necessary to protect the 2.35-acre tract solely as the result of later changed conditions and because of later subdivisions over which appellee had no control and on which the Commission authorized wells which were draining the 2.35-acre tract at the time the permit was granted, and which later subdivisions and other adjoining tracts enjoyed a greater well density per acre than did the 2.35-acre tract.

The undisputed facts showed that after the 2.35-acre tract was subdivided from the 6.88-acre tract in 1932, the portion of the 6.88-acre tract lying east of the 2.35-acre tract was later subdivided into three tracts containing, respectively, 1 acre, .67-acre, and .9-acre. Likewise was the portion of the 6.88-acre tract lying west of the 2.35-acre tract later subdivided into two tracts containing, respectively, .67-acre and .83-acre. Appellee Gulf Land Company had no part in, and is not chargeable with, any of these later subdivisions. When the permit was granted, a well had been authorized, drilled and was producing oil on each of these small subdivisions, and each well is within a few feet of the 2.35-acre tract. Offset wells on other tracts outside the 6.88-acre tract have been authorized and drilled and are within a short distance of the 2.35-acre tract in question. None of these wells, except two, are shown to have been authorized or drilled before the 2.35-acre tract was subdivided from the 6.88-acre tract in 1932. The 2.35-acre tract has one well while the average density of an eight times circular area surrounding it is one well to each 1.5 acres by reason of the authorized drilling aforementioned. So, the 2.35-acre tract is recovering only about one-half as much oil per acre per day as is being recovered on said surrounding acreage, and manifestly it is entitled to the second well in question here. In such situation the question of a voluntary subdivision before the changed conditions took place is not material.

The majority opinion does not discuss this question at all, although the facts are undisputed as above stated, and the question is copiously presented in the briefs of the parties; but the majority dismiss the subject of subdivision with the observation: "Gulf Land Company was charged with notice, when it acquired its leasehold, that such tract could not be developed without an exception to said rule, and consequently acquired no vested right to such an exception to prevent drainage." Manifestly this conclusion of the majority is but a collateral attack upon all wells drilled in the area under authority of the Commission, and over which appellee had no control; and is the interpretation of the rule by the majority as inhibiting forever any further development after subdivision. Such interpretation is in conflict with the opinions of this court, and particularly of the Supreme Court, in the several cases holding that changed conditions will authorize the drilling of wells as exceptions to the spacing rule. Magnolia Pet. Co. v. New Process Production Co., 129 Tex. 617, 104 S.W.2d 1106, wherein the court held [page 1111]: "If conditions change, rights change, and the governing statutes place the matter of ascertaining such rights and determining the facts relating thereto in the first instance under the jurisdiction of the Railroad Commission."

See, also, Stanolind Oil & Gas Co. v. Edgar, Tex.Civ.App., 107 S.W.2d 631 and Stanolind Oil & Gas Co. v. Railroad Commission, Tex.Civ.App., 107 S.W.2d 633.

Manifestly the majority are in error in holding in substance that when Gulf Land Company acquired its lease in 1932, it was charged with notice that a great number of wells would later be drilled around its lease by virtue of future Commission orders, and as exceptions to the rule in reference to which it contracted, and that five such wells would be drilled on the 4.53 acres remaining out of the original 6.88 acres; and that it was compelled to foresee that the Federal Court would, thereafter, permit the Humphrey No. 1 to be drilled within a few feet of its line in a suit to which it was not even a party, and that the Commission would not appeal from such a judgment. To require this, is to require a man to contract with reference to a rule not yet made, and a situation not yet in existence. An entirely analogous requirement would be to say that he contracted with the knowledge that the Commission might later change its spacing rule and increase the prescribed distances; which this court held was not permissible. Humble Oil & Ref. Co. v. Railroad Commission, Tex.Civ.App., 94 S.W.2d 1197, error refused.

Neither the rule nor the decisions construing it prohibit subdivisions under any circumstances. The full extent to which either go is to prohibit, or limit, the right to acquire additional wells by reason of the subdivision. New Process Case, supra. Oil fields do not stand still. They are being continuously developed. And while appellee may not have been entitled to this additional well in 1932, when the subdivision of the 2.35-acre tract was made, such subdivision does not prohibit it from protecting its land or oil rights from disadvantages which did not exist when the subdivision was made, but which have been occasioned by subsequent Commission orders. In such a case, the additional well is not required by reason of the subdivision,

but by reason of Commission orders entered after the subdivision occurred. And no doubt the Commission has so developed the area under its official finding that the more wells drilled the greater will be the ultimate recovery of oil in any given field or area, provided they are drilled in accordance with substantial uniform spacing.

It is also the writer's view that in granting drilling permits as exceptions to Rule 37, the Commission is entitled to consider not only wells actually drilled on adjoining tracts, but also such wells as have been authorized but have not in fact been drilled at the time the permit is granted. If such view is correct, then appellants have failed to discharge the burden of proof resting upon them, in that they introduced no evidence whatever as to the number, or location, of wells authorized to be drilled but not then drilled in the area surrounding Gulf Land Company's lease, at the time the permit in suit was granted. Their own witness, Parker, testified that their maps only showed such wells as had actually been completed in the area under consideration. Other well permits may have been granted but not developed. This, of itself, is sufficient to compel an affirmance of the trial court's judgment.

The above conclusion is based upon the rule that the permits granted for the undrilled wells are prima facie valid; and that one whose rights are affected by the permits does not have to stand by until the prima facie validity of the undrilled permits may or may not be tested by the immediate parties at interest.

In defining the rights of one seeking a permit for an additional well this Court, and the Supreme Court, have announced several times: "A lessee is entitled only to an equal opportunity with the lessees of adjacent lands to recover his fair share of the oil in place beneath his tract; and when he is enabled to do so, the requirements of the law and the commission's rule to protect him against confiscation have been met." See majority opinion Railroad Commission v. Gulf Production Co., Tex.Civ. App., 115 S.W.2d 505, 507, and cases cited.

So, in absence of pleadings and proof, and in support of the validity of the permit, it will be presumed that appellants will each get from their respective leases the full equivalent of all recoverable oil that originally underlay them, even if the permit in suit is sustained. Certainly there is neither pleading nor proof to the contrary. If so, appellants' only complaint is that the well in suit prevents them from recovering more of somebody else's oil than they would otherwise get. We cannot justly test appellee Gulf Land Company's rights by one standard, and apply a different and more liberal rule in defining appellants' rights. This subject is discussed in Ortiz Oil Co. v. Deep Rock Oil Corp., Tex.Civ. App., 112 S.W.2d 210, at page 211, writ of error dismissed; and the majority holding in the instant case is in conflict with that decision.

The judgment of the trial court should have been sustained.