**RAILROAD COMMISSION OF TEXAS et al. v. MAGNOLIA PETROLEUM CO.**

No. 8653.

Court of Civil Appeals of Texas. Austin.

June 1, 1938.

Rehearings Denied Oct. 26, 1938.

Wm. McCraw, Atty. Gen., Chas. D. Rutta and Harry S. Pollard, Asst. Attys. Gen., for appellant Railroad Commission of Texas.

Wm. A. Wade, of Longview, and Hamilton, Harrell, Hamilton & Turner, of Dallas, for appellants W. R. Beall and Jay Simmons.

W. H. Francis and Walace Hawkins, both of Dallas, and Greenwood, Moody & Robertson, of Austin, for appellee.

BLAIR, Justice.

This is a companion cause to cause No. 8650, Magnolia Petroleum Company v. Railroad Commission et al., 120 S.W.2d 548, this day decided by the majority view of this court. The two cases, were tried as one case on the same statement of facts. The trial court sustained the permit to drill the well in cause No. 8650, but declared the permit to be invalid in the instant case. The record does not disclose the reason why the trial court declared one permit valid and the other invalid under identical facts. For this reason alone the writer would concur in the reversal of both cases; but does not concur in the ground upon which the majority reversed cause No. 8650; nor the ground upon which the majority sustained the judgment of the trial court declaring the permit to be void in the instant case; and believes that both. cases should be remanded for a new trial upon the merits. Suffice it to say for the majority view that the tract of land on which the permit involved in the instant case was

---

1 Rehearing pending.

granted was owned by W. R. Beall, and was the same size and adjacent to the Edith Osborn Pyle, 15-acre tract involved in cause No. 8650; and the opinion of Mr. Associate Justice Baugh in said cause, referred to without restatement in this cause, requires that the judgment of the trial court holding the permit in the instant case invalid be affirmed.

The record shows, however, that conditions surrounding the tracts involved have materially changed between the time the permits were granted and the date of the trial; and further, verified exhibits attached to appellee's brief show that further changes have taken place since the trial of said causes. Under these circumstances, and in view of the fact that said well has already been drilled, the judgment of the trial court holding said permit invalid and enjoining production from said well is affirmed. That portion of the trial court's judgment directing appellant Baell to plug said well is set aside. This judgment, however, is without prejudice to the rights of appellee to again apply to the Commission for such orders in the premises as much changed conditions which have taken place since said permit was granted may warrant.

The writer concurs in the finding of the majority view that the two tracts involved in the two cases were voluntarily subdivided after rule 37 became effective in the East Texas oil field; but that fact standing alone does not prevent the Commission from granting a permit to drill a well on the segregated tract or tracts. In the recent case of Humble Oil & Refining Co. v. Lasseter, 120 S.W.2d 541, Chief Justice McClendon writing the opinion, this court held that, independently of a voluntary segregation, if the entire tract as it existed prior to segregation is entitled to an additional well in order to protect the vested rights of the owners of such larger tract to recover their fair share of the oil thereunder, the permit to drill the well on the segregated portion will be upheld; and that the permit to drill the well is prima facie valid requiring the party attacking it to allege and prove that, as applied to the entire tract before the segregation, and well was not necessary to protect vested rights. This holding was based upon our interpretation of the Century case (Railroad Com. v. Magnolia Pet. Co., Tex.Sup., 109 S.W.2d 967) as so holding. And in the instant case appellee failed to allege, or if so alleged to prove that independently of the voluntary segregation the 54-acre tract as it existed prior to segregation was not entitled to the additional well.

Only one witness testified, an expert petroleum engineer, who testified for appellee. He testified that in his opinion the additional well was not necessary to produce all of the recoverable oil originally under the 54-acre tract. He testified as to the density of wells on appellee's 44.61-acre lease, and as to the density of wells on the 54-acre tract; that the 54 acres had more wells per acre than the 44.61-acre tract; and that this disparity in the drilling would result in some drainage from the 44.61-acre tract; but as to how much he did not know, except that it would be appreciable. He further testified that this disparity of drainage could be effectively protected by the drilling of "two to three wells" as offsets by appellee. The evidence showed that between the time of the granting of the permit and the trial appellee had drilled two additional wells on the 44.61-acre tract. Witness further testified that at the time of the hearing on the permit in question and before it was granted, appellee had ample wells on its 44.61-acre tract to protect it against drainage from the 54-acre tract. The comparison of density of drilling was only as between the two tracts. No attempt was made to show the density of drilling on an area eight times the size of the 54-acre tract; nor that under such density theory the owners of the 54-acre tract, considered as it existed before its subdivision and at the time the permit was applied for, were not entitled to the additional well in order to accord to the owners of the 54-acre tract, considered as a whole, their fair share of the oil, or to accord to them a fair opportunity to drill sufficient wells to obtain such fair share of the oil. This density of drilling theory is not confined to two adjacent tracts, but to an area eight times the size of the tract in question, and immediately surrounding it. Sun Oil Co. v. Gillespie, Tex.Civ.App., 85 S.W.2d 652; Atlantic Oil Production Co. v. Railroad Commission, Tex.Civ.App., 85 S.W.2d 655; Smith County Oil & Gas Co. v. Humble Oil & Refining Co., Tex.Civ.App., 112 S.W.2d 220; Ortiz Oil Co. v. Deep Rock Oil Corp., Tex.Civ.App., 112 S.W.2d 210, error dismissed. As against the prima facie validity of the order granting the permit to drill the well in question, appellee is required to

allege and prove facts which would clearly and satisfactorily show that the additional well was not necessary in order to accord to the owners their fair share of oil under the 54-acre tract in accordance with the density theory or rule applied in the cases cited. The mere opinion of an expert, not based on any facts showing the density of drilling on the surrounding area and its actual condition, is not sufficient to overcome the prima facie valid order of the Commission granting the permit, because in absence of such proof it must be presumed that the Commission knew how many wells had been drilled in the particular area; knew of all the conditions as to the location of wells in the particular area; and knew all conditions of drainage, and of all matters concerning the surrounding lands. This conclusion is in accord with the Century case (Railroad Com. v. Magnolia Pet. Co., Tex.Sup., 109 S.W.2d 967).

And the finding and holding of the majority view that "this evidence, together with the showing of uniformity of underground conditions in this area, coupled with the majority interpretation that the spacing provisions of rule 37 constitute an official finding by the Commission that wells spaced at lesser distances than those prescribed by the rule, producing equally, where uniform underground conditions prevail, tend to create waste, particularly in the absence of any affirmative evidence to the contrary," is in direct conflict with the Century case, which specifically holds that rule 37 is not overborne with any finding that wells drilled at closer distances than prescribed by the rule will cause waste. A further discussion of this question will be shown in the writer's dissenting opinion in Cause No. 8635, Stanolind Oil & Gas Co. v. Midas Oil Co.,[1] —— S.W.2d ——, decided May 25, 1938, by the majority view.

The maps introduced in evidence show that the entire surrounding area has been drilled at lesser distances than the general distances provided for in the rule, and that the most densely drilled area is that immediately adjoining and immediately surrounding the 54-acre tract; and although these conditions were shown to have existed at the time the permits in question were granted, the expert witness made no effort to investigate actual conditions as to any waste being caused in the area by such density of drilling. That is, no abnormal water encroachment nor abnormal loss of reservoir pressure was shown in the area, which were the only items of waste that could have resulted from too densely drilling the area. These were matters capable of specific proof. The majority finding that the expert witness testified that waste would be caused by drilling the wells in question and necessary offsets thereto is based solely upon his mere opinion, and without any basic facts showing the actual physical conditions existing in the area as to water encroachment and reservoir pressure. An entirely similar situation was presented to this court in the case of Humble Oil & Refining Co. v. Railroad Commission, 99 S.W.2d 401, Mr. Justice Baugh writing the opinion, and in which the court say [page 402]: " * * * we think the Railroad Commission and the trial court were authorized, with the maps before them * * * to draw their own factual conclusions * * * and were not conclusively bound by the expert opinion of the employee of the appellant * *."

The majority view has also set aside the rule established by uniform decisions of our courts for a generation holding that the rates, orders, rules, etc., of administrative boards or commissions are prima facie valid, and can only be set aside on an appeal to the courts upon clear and satisfactory evidence which leaves no reasonable doubt in the judicial mind of the unjustness, unreasonableness, or invalidity thereof. Railroad Commission v. Galveston Chamber of Commerce, 105 Tex. 101, 145 S.W. 573, and cases therein cited. And the effect of the majority view is that where A obtains a prima facie valid permit to drill an oil well on his land, such prima facie validity is overcome by a mere opinion of an interested expert witness, and then the Commission and permittee must proceed to trial and offer proof showing the expert opinion to be wrong, although it is based on no actual facts showing waste in the area affected. If such ruling shall become the law, then the court substitutes itself as administrator of the conservation laws, and renders the action of the administrative commission a mere act of formality as a necessary step to securing court action.

[1] Rehearing pending.

The judgment of the trial court is affirmed in part and in part reversed with instructions.

Affirmed in part and in part reversed with instructions.