**TENNECO OIL CO.**

**v.**

**STATE INDUSTRIAL COMMISSION.**

In the matter of a hearing called on a motion of the State Industrial Commission of the State of North Dakota to consider the application of Tenneco Oil Company for an exception location for a well in the N½ of NE¼ of Section 6, Township 158 North, Range 81 West, in the Glenburn Field, Renville County, North Dakota.

No. 8103.

Supreme Court of North Dakota.

Dec. 17, 1964.

Cox, Pearce, Engebretson, Murray, Atkinson & Gunness, Bismarck, for appellant Tenneco Oil Co.

Sp. Asst. Atty. Gen. Gerald W. Vandewalle, for State Industrial Commission.

Fleck, Mather, Smith & Strutz, Bismarck, for California Oil Co.

BURKE, Judge.

This is an appeal from a judgment of the District Court of Burleigh County affirming an order of the State Industrial Commission which denied the appellant, Tenneco Oil Co., an exception to the regular spacing pattern in Glenburn Oil Field in Renville County.

By its order No. 222, the Industrial Commission established 80 acre spacing in the Glenburn Oil Field. Since the field ran generally in a North and South direction, the regular spacing units ran in the same direction and were designated as the East Half or the West Half of the quarter sections. The order of the Commission, however, permitted the designation of any two adjacent 40 acre tracts in the same quarter section as a spacing unit. However, whether a spacing unit ran north and south or east and west, the drilling pattern required the wells to be drilled in the Northeast Quarter and the Southwest Quarter of quarter sections.

The Northwest Quarter of Section 6, Township 158, North, Range 81 West, Renville County is owned by Harvey Schrouder. At one time the East Half of this quarter section was leased by California Oil Company. The California Company had designated the East Half of the quarter section as a spacing unit and had drilled for oil in the Northeast Quarter thereof in accordance with the regular drilling pattern for the field. The drilling was not successful and the California Company thereafter surrendered or failed to renew its lease.

Tenneco, which owned the lease upon the West Half of the described quarter section, instituted this proceeding by applying the Industrial Commission for the allowance of an exception to the regular field drilling pattern which would permit it to drill in the Northwest Quarter of the quarter section instead of in the Southwest Quarter. This application was filed as Case No. 516 and a hearing was had thereon. At this hearing the testimony of the experts was directly in conflict. The experts who testified for Tenneco stated that, in their opinion, a well drilled in the Southwest Quarter of the quarter section would enter the oil-bearing structure below the water-oil contact level, that such a well would not produce oil and that the only way that Tenneco and the landowner could recover their fair share of the oil underlying the quarter section was by means of a well located in the Northwest Quarter of the quarter section. The experts, who testified on behalf of the California Company, stated that, in their opinion, a well drilled in the Southwest Quarter of the quarter section, would enter the oil bearing structure about 34 feet above the water-oil contact level, would be a commercially satisfactory well, would adequately drain the oil from the West Half of the quarter section and would protect the correlative rights of other operators and

owners in the field. These opinions were supported by contour maps of the top of the oil bearing structure which in turn were supported by the drilling logs of completed wells and by the geophysical findings of seismographic explorations.

While the Industrial Commission had this case under consideration Tenneco acquired the lease to the East Half of the quarter section which had been dropped by the California Company. Tenneco then filed with the Industrial Commission a new or amended application for a permit for a drilling exception. This application designated the North Half of the quarter section as the spacing unit and, as in the original application, requested a permit to drill in the Northwest Quarter of the quarter section. This application was designated as Case No. 532 and a new hearing was had thereon. At the hearing it was established by uncontradicted testimony that there was no reasonable possibility of drilling a producing well upon the newly constituted spacing unit except in the location for which the exception permit was requested. In opposition there was testimony that such a well would interfere with the correlative rights of other producers and owners and that a well drilled in the Southwest Quarter of the quarter section, although it was not in the newly designated spacing unit, would give both Tenneco and the owner of the land a fair opportunity to recover their share of the oil under the whole quarter section.

In its decision the Commission found that the evidence in support of the application was inconclusive and denied the application "upon its present merits."

An appeal was taken from this decision to the District Court of Burleigh County and a judgment affirming the decision was entered upon that appeal. This appeal is from that judgment.

Section 38–08–14 NDCC sub-sec. 4, limits the extent of review upon an appeal from an order of the Industrial Commission as follows:

" * * * Orders of the commission shall be sustained if the commission has regularly pursued its authority and its findings and conclusions are sustained by the law and by substantial and credible evidence."

Section 38–08–07 NDCC makes it the duty of the Industrial Commission to set spacing units in oil fields "When necessary to prevent waste, to avoid the drilling of unnecessary wells, or to protect correlative rights, * * *."

■ Subsection 3 of Section 38–08–07, supra, provides:

" * * * Upon application, if the state geologist finds that a well drilled at the prescribed location would not produce in paying quantities, or that surface conditions would substantially add to the burden or hazard of drilling such well, the state geologist is authorized to enter an order permitting the well to be drilled at a location other than that prescribed by such spacing order; * * *."

This section also provides for an appeal from the decision of the State Geologist to the Industrial Commission. In the instant case, however, the State Geologist was bypassed and the application for an exception was filed with the Industrial Commission in an original proceeding. No objection is made to this procedure.

■ It is well settled that a spacing order may not deprive an owner or lessee of land of a fair chance to recover the oil and gas in or under his land. 58 C.J.S. Mines and Minerals § 230, p. 633 et seq.; Gulf Land Co. v. Atlantic Refining Co., 134 Tex. 59, 131 S.W.2d 73; Smith County Oil & Gas. Co. v. Humble Oil and Refining Co., Tex. Civ.App., 112 S.W.2d 220; Richfield Oil Corp. v. Crawford, 109 A.C.A. 775, 241 P.2d 1020.

■ An applicant for an exception to a spacing order upon the ground that such an exception is necessary to prevent confiscation has the burden of showing that he

is entitled to the permit. 58 C.J.S. Mines and Minerals § 230, p. 638. He must show that the well is necessary to protect his right to recover his fair share of the recoverable oil underlying his land. 58 C.J.S. Mines and Minerals § 230, p. 634.

In this case the Industrial Commission found that the applicant and appellant had not sustained the burden of proof. It based this finding upon its determination that a well in the Southwest Quarter of the Northeast Quarter of Section 6 would afford the appellant a fair chance to recover the oil underlying the whole Northeast Quarter of Section 6.

Appellant challenges this finding principally upon the ground that the Southwest Quarter of the Northeast Quarter is not within the spacing unit for which the exception is asked and that the evidence conclusively establishes that the only location for a well, within the designated spacing unit, which will give appellant a fair chance to recover the oil under that spacing unit, is in the Northwest Quarter of the Northeast Quarter. Appellant argues that the Commission by its spacing order determined as a fact that one well for each 80 acres was necessary to afford lessees and owners a fair chance to recover the oil underlying their land and that the order in this case, by adding an additional 40 acres to the spacing unit, designated by appellant, in effect amended its original spacing order, created a spacing unit of 120 acres and found that only one well was necessary to give a fair chance to recover the oil underlying 120 acres. Appellant contends that the Industrial Commission has no power to amend a spacing order except after a hearing held upon due notice to all interested parties.

In considering appellant's position it must be remembered that the spacing units originally designated in the Northeast Quarter of Section 6 were the East Half and the West Half of the quarter section. California Oil Company was the lessee of the East Half and appellant was the lessee of the West Half. California Oil Company obtained a drilling permit to drill in the Northeast Quarter of the quarter section. This was the regular site for a well in the spacing unit designated as the East Half of the quarter section. The well drilled by California Oil Company was not a producer. Thereafter, appellant made an application for an exception location for a well located in a spacing unit designated as the West Half of the quarter section. A hearing was had upon this application. At the hearing, there was expert testimony to the effect that a well drilled in the regular drilling site in the Southwest Quarter of the quarter section would give a fair chance to recover the oil under the spacing unit and that while a well drilled at the requested exception site would in all probability be a better well it would interfere with correlative rights of owners or operators upon adjacent forty acre tracts to the North and West of the proposed site. Appellant's evidence was to the contrary, but it was apparent that an order denying the application would be supported by credible evidence. While the original application was still pending, appellant acquired the lease upon the East Half of the quarter section which had been abandoned by California and upon which all experts agreed no commercial production of oil could be obtained. After acquiring the lease of land upon which California Oil Company had drilled a "dry hole" appellant amended its application by designating the North Half of the quarter section as the spacing unit instead of the West Half. The exception site for the requested well was exactly the same as that contained in the original application. It appears that, by this maneuver, appellant attempted to place the Commission in a position where it would be forced to grant the application. In such a situation Corpus Juris states that the rule is as follows:

"* * * the right to be protected against 'confiscation' under the spacing rule is not absolutely unconditional or unlimited, and that, where a situation which would circumvent the spacing

rule is created by voluntary act, acquiescence, or connivance of the parties after the rule has attached to the property, such situation cannot be asserted as a valid ground for (an) exception to the rule, and the parties are relegated to their rights as they existed prior to the creation of such situation." 58 C.J.S., Mines and Minerals, § 230, p. 635.

In Atlantic Refining Co. v. Gulf Land Co., 122 S.W.2d 197, 199, the Texas Court of Civil Appeals stated:

" * * * It is now settled that one acquiring land or a leasehold estate therein must contract with reference to, and not so as to necessitate an exception to, rule 37, in order to secure a vested right which he is entitled to have protected."

■ The rule above stated has been applied in most cases to situations where, after a spacing area has been established, the applicant for an exception has acquired land or a leasehold of an area smaller than the established spacing area, and has claimed a vested right to recover the oil from the smaller area. What the applicant has done in the instant case is but a variation upon the same theme. By acquiring a leasehold upon a 40 acre tract which had been proven unproductive and combining it with a 40 acre tract which would probably be productive to form a designated spacing unit, applicant, in fact, contrived to present only a 40 acre tract for the consideration of the Commission. If such a juggling of interests were countenanced by the Commission, it would mean that "dry holes" upon the periphery of oil fields could be acquired for the purpose of forcing 40 acre spacing upon the Commission in areas immediately interior to such "dry holes."

The evidence in this case established that there are many areas upon the outer boundaries of the Glenburn Field where such a circumvention of the spacing program would be of advantage to the owners and lessees of such areas but also that it would be injurious to the correlative rights of the owners and lessees of adjacent producing acreage.

In fairness to the applicant and appellant, we think it should be pointed out that its tactical shift of position in this case was suggested to it by an Assistant State Geologist during the course of the hearing upon its original petition.

For all the reasons above stated the judgment of the district court sustaining the order of the Industrial Commission is affirmed.

MORRIS, C. J., and STRUTZ, TEIGEN, and ERICKSTAD, JJ., concur.