## HUMBLE OIL & REFINING CO. v. RAILROAD COMMISSION OF TEXAS et al.

### No. 8282.

Court of Civil Appeals of Texas. Austin.

June 26, 1935.

Rehearing Denied July 24, 1935.

Rex G. Baker and R. E. Seagler, both of Houston, and Powell, Wirtz, Rauhut & Gideon, of Austin, for appellant.

J. W. Wheeler, of Austin, and Lanham Croley and Hamilton, Hamilton & Turner, all of Dallas, for appellees.

BAUGH, Justice.

Appellant filed this suit in the court below in the nature of an appeal from an order of the Railroad Commission of Texas granting to L. B. Pruitt and W. W. Graham a permit to drill an oil well on a strip of land in Van Zandt county, Tex., approximately 80 feet wide and 2,640 feet long, running north and south, and containing approximately 5.87 acres. Appellant owned a lease on the adjacent land to the west thereof. The suit was predicated upon the ground that G. W. Carter, as owner of 180 acres of land adjoining appellant's lease on the east, had in 1928, when rule 37 was in force, voluntarily segregated this strip from said 180-acre tract, which entire tract was capable of development as a whole. As to this, the facts are undisputed. Thereafter, on January 27, 1930, Carter leased to Andrade the strip here in controversy, which lease passed by assignment to Pruitt and Graham, appellees herein. On November 17, 1934, the Railroad Commission granted to Pruitt and Graham a permit, as an exception to rule 37, to drill the well in question, reciting that same was granted "to prevent confiscation of property."

The appellant attacked the order granting the permit as unreasonble, unjust, discriminatory, and arbitrary; sought to have it set aside and annulled; and prayed for a temporary injunction restraining Graham and Pruitt from drilling and operating said well under such permit, on the grounds, among others, that the drilling and operation of such well would, in addition to irreparably injuring appellant, necessarily create waste in violation of the conservation laws. At a hearing thereon the trial court refused to grant the temporary in-

junction prayed for, on the ground that appellant had not shown, as the court interpreted article 4644, R. S. 1925, to require, that Graham and Pruitt were unable to respond in damages. This appeal is from that order. The validity of said permit has not been determined in a trial upon the merits.

Appellant here contends that article 4644, R. S., is unconstitutional; that if constitutional it does not apply to the case here involved; or that if it does apply, the trial court did not properly interpret said article as applied to the instant case; and that appellant was entitled to be granted a temporary injunction under the undisputed facts of this case in any event.

So far as we have been able to find, the issues here presented have never been passed upon in any adjudicated case. The article in question reads as follows: "Art. 4644. Against well or mine operator.— No injunction or temporary restraining order shall ever be issued prohibiting subsurface drilling or mining operations on the application of an adjacent land owner claiming injury to his surface or improvements or loss of or injury to the minerals thereunder, unless the party against whom drilling or mining operations is alleged as a wrongful act is shown to be unable to respond in damages for such injury as may result from such drilling or mining operations; provided, however, that the party against whom such injunction is sought shall enter into a good and sufficient bond in such sum as the judge hearing the application shall fix, securing the complainant in the payment of any injuries that may be sustained by such complainant as the result of such drilling or mining operations. The court may, when he deems it necessary to protect the interests involved in such litigation, in lieu of such bond, appoint a trustee or receiver with such powers as the court may prescribe, to take charge of and hold the minerals produced from the lands of those complained against or the proceeds thereof subject to the final disposition of such litigation."

It is not amiss to here observe that because of the enormous volume of the oil and gas natural resources in this state, the immense waste thereof in the past, the legislative history of the conservation laws, and the repeated adjudications of the various phases of such laws, the courts may properly take judicial notice, not only of the development and application of these laws themselves, but of the conditions which impelled their enactment. These conditions have come to be matters of common knowledge. See Danciger Oil & Ref. Co. v. R. R. Com. (Tex. Civ. App.) 49 S.W.(2d) 837.

This article, when enacted in 1919, was clearly dealing only with the respective private property rights of adjacent owners as between themselves, and not with the matter of conservation of the natural resources, and the prevention of the waste thereof in which the state was interested on behalf of the public. It obviously was not intended to relate to the latter question. This for the obvious reason that the conservation laws now applicable had not then been enacted. At the time of the enactment of article 4644, no limitations were prescribed either by law or by any agency of the state governing the location of wells with reference to property lines, their proximity to each other, or limiting the volume of production from any well or oil pool. Those were matters left largely, if not entirely, to the discretion of the respective owners; and the race for recovery of such oil favored the diligent. Where, as was then the case, wells were permitted to flow without restriction, it is obvious that drainage of one's land by wells in close proximity on the adjoining land worked serious injury to the owner whose land was being drained. And, as stated, the property rights of the adjacent owners were then the matters of chief concern when said article 4644 was enacted. It was with reference to these private property rights, we think, that said law was passed, and that it could not have been intended as any limitation upon the enforcement of the conservation laws, subsequently enacted, wherein the state sought to conserve its natural resources. To give said article a literal application would make it apply against the state the same as against individuals; and if a party undertook to drill such well in violation of the spacing provisions of rule 37, or in violation of the conservation laws, or under circumstances clearly causing waste as defined by the statute itself (article 6014, R. S. 1925, as variously amended [Vernon's Ann. Civ. St. art. 6014]), if such party were able to respond in damages,

under appellees' contention, no injunction could issue. Such construction or application of article 4644 would be wholly at variance with the express provisions of the conservation laws, particularly article 6029, R. S. 1925, and article 6049c (Vernon's Ann. Civ. St.), as amended from time to time by successive Legislatures (Vernon's Ann. Civ. St. arts. 6029, 6049c), and would greatly impair, if not render nugatory, their effective enforcement. That such purpose was not intended by the Legislature is clear. And if article 4644 be construed as general in its scope, and applicable to any well sought to be drilled, it is clear to our minds that in so far as oil development under the supervision of the Railroad Commission and the valid rules promulgated by it are concerned, said article has been superseded by the subsequently enacted conservation laws in so far as the provisions of said article run counter to such laws.

The instant case manifestly involves the application of an order of the Railroad Commission under the conservation laws, and its disposition is dependent upon the provisions of said laws. That being true, it is our conclusion that article 4644 is not here controlling, and it becomes unnecessary for us to determine its constitutionality, or to interpret it as applicable to the respective private property rights of the adjoining landowners as between themselves. The validity of said conservation laws and of rule 37 of the Railroad Commission promulgated pursuant thereto are no longer open questions; and the disposition of this appeal must rest thereon.

The undisputed facts of this case, and the findings of facts filed by the trial court, bring this case clearly within the rule announced in Sun Oil Co. v. Railroad Commission (Tex. Civ. App.) 68 S.W.(2d) 609; Humble Oil & Ref. Co. v. Railroad Commission (Tex. Civ. App.) 68 S.W.(2d) 622; Smith v. Stewart (Tex. Civ. App.) 68 S. W.(2d) 627, all of which cases have been affirmed by the Supreme Court.

These decisions were announced by this court in December, 1933, and January, 1934. Thereafter, on May 29, 1934, and obviously based upon such decisions, the Railroad Commission amended its general rule 37, by adding thereto the following:

"It is ordered by the Railroad Commission of Texas, that in applying Rule 37 (spacing rule) of state wide application and in applying every special rule with relation to spacing in every field in this State, no subdivision of property made subsequent to the adoption of the original spacing rule will be considered in determining whether or not any property is being confiscated within the terms of such spacing rule, and no subdivision of property will be regarded in applying such spacing rule or in determining the matter of confiscation if such subdivision took place subsequent to the promulgation and adoption of the original spacing rule."

The permit attacked in this suit was granted by the commission on November 17, 1934. The record discloses that the strip of land here involved was voluntarily segregated by the owner thereof from a larger tract capable of development as a whole in 1928, when the 300-150 foot spacing rule 37 was then in force; that this strip was subsequently leased by the owner thereof to a different party in January, 1930; and that to drill such strip would require an exception to rule 37 either before or after the May 29, 1934, amendment thereto. Under these facts, therefore, the permit in question constituted a clear violation of its own published rule and its amendment thereto of May 29, 1934. Such permit the Railroad Commission itself had no authority to grant arbitrarily, in violation of its own published rules. See Sun Oil Co. v. R. R. Commission, supra; Brown v. Humble Oil & Ref. Co. (Tex. Sup.) 83 S.W. (2d) 935.

Since, however, the injunction was refused, no trial has been had upon the merits, and the appellees Graham and Pruitt have probably proceeded to drill said well and to produce oil therefrom, we are not in position to issue proper injunctive relief under such changed conditions as may now exist. The judgment of the trial court will therefore be reversed, and the cause remanded, with instructions to the trial court to grant such relief as the changed conditions may require, upon execution by appellant of such bond as the court may determine.

Reversed and remanded, with intructions.