**HASTINGS OIL CO. et al. v. TEXAS CO. et al.**

No. 12138.

Court of Civil Appeals of Texas. Galveston.

Feb. 2, 1950.

J. E. Davant, of Bay City, Masterson & Pope, Alex Pope, Jr., Minor M. Smith and Fred L. Williams, Jr., all of Angleton, for appellants.

Rucks, Enlow & Kee, of Angleton, Wm. E. Loose and David D. Pollan, of Houston, for appellees.

CODY, Justice.

This is an appeal from the action of the court in granting appellees a temporary injunction. Before setting out the substance of the temporary injunction which is here appealed from, we will state:

That appellees and appellants are owners, respectively, of oil and gas leases on adjoining tracts of land located in the West Columbia oil field in Brazoria county. As for cause of a temporary restraining order, and temporary injunction pending a trial on the merits, the appellees alleged that the bore hole of a well which appellants were drilling, the surface of which well was located on appellants' lease, was caused or permitted by appellants to deviate so greatly from a perpendicular direction that same had entered into the subsurface of appellees' lease and constituted a continuing trespass. Appellees alleged that unless appellants were restrained they would test for and produce oil from sands located in the subsurface of appellees' lease, through the bore hole, the bottom of which was in appellees' lease, and the top or surface of which was located on appellants' lease. To correct a certain over-simplification which we have indulged for the sake of clarity in stating the substance of appellees' allegations, we quote from appellees' original petition: "That while the available and pertinent subsurface data reasonably indicates the well hole so drilled by defendants (appellants), as aforesaid, has entered within the subsurface of the Phillips' (appellees') tract, as aforesaid, the fact cannot be determined with definiteness and certainty except from a directional survey of the hole, conducted by an expert trained and skilled in that work; that defendants, so plaintiffs are informed and believe * * * did not in the course of drilling said well make or cause to be made deviation surveys, nor did they make or cause to be made directional surveys at the total depth of the well".

Pursuant to the application therefor in appellees' original petition the court granted, ex parte, on June 21, 1949, a restraining order to prevent appellants from making the perforations in the casing, etc., in order to test for the production of oil from appellees' land. No doubt because such temporary restraining order was interlocutory from which no appeal lay, the appellants applied to this court for a writ of mandamus against the trial court, to relieve against the temporary injunction. This court refused said application.

There after the hearing was had upon appellees' application for a temporary injunction, at which hearing the order granting temporary injunction here appealed was granted. Before stating the substance of the writ of temporary injunction granted, it is proper to note that appellants urged a plea in abatement that appellees had failed to make the owners of the tract, on which appellants held the oil lease, parties defendant; and that the owners of the fee to the tract on which appellants held the lease were necessary parties. The court overruled this plea before the hearing on the temporary injunction. To this ruling, appellants duly excepted.

In connection with the trial, on appellees' application for temporary injunction to forbid appellants from completing or conducting further operations on Hastings Oil Company Mays No. 1 Well, the court also heard appellees' application for a subsurface directional survey of appellants' well, and for a report of the finding of the survey to be returned into court. The court granted the application, as aforesaid, on August 3, 1949, for the temporary injunction, and granted the application for the directional survey, subject to certain limitations. In connection with the order granting the relief sought at said hearing, the court found:

(a) That there is probable cause to believe that the boundary line between the Mays tract, upon which the surface of the bore hole of said well is located, and the Phillips tract, upon which plaintiffs have and are operating an oil and gas lease, runs on a course of N. 44° 51' E. from the most southern corner of the Mays tract to its most eastern corner a distance of 528.30 varas through a point which bears N. 44° 51' E. 329.15 feet from the said most southern corner of said tract, and S. 45° 09' E. 174.65 feet from the mouth of said well on the surface of said Mays tract.

(b) That there is probable cause to believe that the bore hole has so far deviated from the vertical that, at the points where it encountered the upper member of the Marginulina sand at a depth of about 5,716 feet and a thin member of the Frio sand at a depth of about 6,750, is situated within the subsurface of the Phillips' (appellees') tract, upon which plaintiffs have an oil and gas lease, from which plaintiffs are producing.

(c) That there is probable cause to believe that defendants, by permitting the bore hole of their well so to enter the subsurface of the Phillips tract, have committed a trespass, and are committing a continuing trespass thereon.

(d) That it cannot be determined with definiteness and certainty whether the bore hole has actually entered the subsurface of the Phillips tract until a scientific, accurate and impartial subsurface, directional survey of the well is made by an expert.

(e) That a determination of said question of fact with definiteness and certainty is essential to a proper decision of and will be a conclusive determination of the controversy between the parties upon a final trial of this cause on the merits.

(f) That neither party hereto has any means or method of obtaining evidence which will determine such question of fact with definiteness and certainty except by and through a scientific, accurate and impartial subsurface directional survey of said bore hole from top to bottom by an expert.

(g) * * *

(h) That under the applicable rules of equity, plaintiffs are justly and equitably entitled to have such subsurface directional survey made, and the results thereof reported to the court and made available to all parties to this cause under the terms and conditions hereinafter ordered.

(i) (This finding is to the effect that the Eastman Oil Well Survey Company is properly equipped with scientific equipment and skilled personnel to make the survey.)

"(j) That the defendant Hastings Oil Company owns and has on hand at the site of said well a drilling rig and equipment and most * * * of the supplies necessary to assist Eastman Oil Well Survey Company in making such subsurface, directional survey of said well, which said drilling rig, equipment and supplies can and should be used for that purpose."

(k) * * *

(l) That the Brewster-Bartle Drilling Company is an experienced and qualified drilling contractor, with experienced drilling crews, qualified to operate the drilling rig and equipment (i. e., appellants' equipment on the ground) in co-operation with the Eastman Company in making the subsurface directional survey of the well.

In deference to appellants' contention that the divulgence of the directions of the deviations from the vertical of the bore hole of the well, and their contention that the location of the bore hole from top to bottom, in reference to the surface location of the well, as revealed by said directional survey, would render moot the question of the right of appellees to such information, and might destroy or impair appellants' right to have that question determined on appeal, the trial court ordered such information, when reduced to a written and photographic report by the Eastman Co., not to be divulged until appellants have had an opportunity to have the question determined on appeal.

The court went on to find that its order providing for the aforesaid sealing of the report would prevent the court from learn-

ing from the report with definiteness and certainty whether said bore hole has entered the subsurface of the Phillips tract, but the court found from the evidence in the case, other than the directional survey contained in the sealed report: That there is probable cause to believe that the bore hole of said well has entered the subsurface of the Phillips tract, etc.

On August 10, 1949, the Eastman Company filed two reports, the sealed report, and another report authorized or required by the court's order, which in part reads:

"The above mentioned bore hole, at a measured depth of 5716 feet was found to have a drift angle of six degrees and thirty minutes, and a horizontal displacement of 468.01 feet; at a measured depth of 5738, a drift angle of 5 degrees, 20 minutes and horizontal displacement of 470.43 feet; at a measured depth of 6750 feet, a drift angle of 2 degrees, thirty minutes and horizontal displacement of 535.54 feet; at a measured depth of 6800 feet, a drift angle of 4 degrees .05 minutes and horizontal displacement of 538.18 feet.

"Since the accumulated co-ordinates must be used to calculate accurately the horizontal displacement of any bore hole, the Eastman Company is of the opinion that the calculations used to arrive at the displacements in Mays No. 1 well cannot be presented without using the direction of the horizontal displacement. Therefore, these calculations have been enclosed in the sealed envelope containing the data on the directional survey and presented to the court".

The order of August 3, 1949, issued after hearing contained the following: " * * * Defendants, their respective officers, agents, servants, attorneys and associates are hereby enjoined until and subject to the further order of this Court from completing said well as a producing oil or gas well; from making any further tests of the oil or gas producing capacity of any of the geological strata which the bore hole of said well encountered; from conducting any operations at said well site which may reasonably, foreseeably result in injuring the oil bearing geological strata or

reservoir within the subsurface of the Phillips tract."

Appellants predicate their appeal upon six points.

1. The order of August 3, 1949, erroneously granted a temporary injunction against appellants prohibiting them from completing Hastings Oil Company No. 1 Mays Well or from conducting tests of the geological strata encountered in the bore hole of the well.

2. The restraining order issued by the trial court on June 21, 1949, as extended was erroneously granted and extended.

3. The trial court erred in authorizing on appellees' request a directional survey of appellees' well hole.

4. The court erred in refusing appellants' application for jury on the question of whether a discovery should be ordered of the well in question by making the subsurface directional survey thereof.

5. The court erred in allowing appellees to file, on the next to last day of the trial, an amendment to the original petition setting up a new cause of action involving an alleged violation of a Railroad Commission Rule.

6. The court erred in overruling appellants plea in abatement setting out the failure to join appellants lessors as necessary parties and objecting to the trial of any question of title on a hearing for temporary injunction.

There was some dispute as to the location of the boundary, but, as noted, the court found there was probable cause to believe the bore hole constituted a trespass.

The substance of the temporary injunction, aside from its deviational survey feature, is to enjoin appellants from making tests for the production of oil from the oil bearing sands in the subsurface of appellees' lease by means of the bore hole which the court found in substance had been opened on the surface of appellants' lease, and slanted so as to penetrate the oil bearing sands of appellees' adjoining lease.

Opinion

We overrule appellants' first point to the effect that the court erred in enjoin-

ing appellants until further orders from completing the Hastings Oil Company No. 1 Mays Well, or from conducting tests in the geological strata therein.

Appellants could, of course, have no more right to bore a well with its top on the surface of their lease, and slant the bore hole so as to trespass upon appellees' subsurface, and produce oil from appellees' oil sands, than they would have to move upon the surface of appellees' surface to appellees' said oil bearing sands. Nor do appellants deny this. It is their position, however, that the court is without power to use its injunctive relief against a solvent trespasser who accomplishes his trespass by subsurface drilling. This, because of the provisions of R.C.S. Art. 4644, which was enacted in 1919, and became effective June 19th of that year. The statute reads: "No injunction or temporary restraining order shall ever be issued prohibiting sub-surface drilling or mining operations on the application of an adjacent land owner claiming injury to his surface or improvements or loss of or injury to the minerals thereunder, unless the party against whom drilling or mining operations is alleged as a wrongful act is shown to be unable to respond in damages for such injury as may result from such drilling or mining operations; provided, however, that the party against whom such injunction is sought shall enter into a good and sufficient bond in such sum as the judge hearing the application shall fix, securing the complainant in the payment of any injuries that may be sustained by such complainant as the result of such drilling or mining operations. The court may, when he deems it necessary to protect the interests involved in such litigation, in lieu of such bond, appoint a trustee or receiver with such powers as the court may prescribe, to take charge of and hold the minerals produced from the lands of those complained against or the proceeds thereof subject to the final disposition of such litigation."

It would be extraordinary indeed, if the legislature intended to deprive the courts of the power to prevent a continuing trespass by the exercise of its injunctive power. At the time of the passage of the statute it had not been settled by the courts of the State that the owner of land cannot be prevented "from drilling on his own land lest he draw oil from under adjoining land, since it is the fugitive character of oil which qualifies the title to it, and puts upon the owner of the soil the risk of it flowing from under or being drawn from under the land before he can or has reduced it to possession, and consequent absolute ownership. We are of the opinion that the injunction preventing the plaintiffs in error from drilling on their own land was improperly issued". Prairie Oil and Gas Company v. State, Tex.Com.App., 231 S.W. 1088, 1091, handed down June 19, 1921.

However, the cited case was instituted in Travis County by the attorney general shortly prior to the passage of Art. 4644. It was in the nature of a companion suit to two cases pending in the district court of Eastland county, wherein the court had issued temporary injunctions which it was held in the cited case ought not to have been issued. See the cited case; see also the opinion of the Court of Civil Appeals therein, 214 S.W. 363; and see Hodges v. Christmas, Tex.Civ.App., 212 S.W. 825. Even in the absence of the historical background of the passage of the statute, namely, that it had not then been settled by the courts whether an adjoining landowner might not enjoin the drilling on adjacent land lest it might drain oil from his land; it is clear from the language of the statute that it was passed to so settle the law: The closing sentence of the statute is enough to establish its purpose. "The court may * * * appoint a trustee * * * to take charge of and hold *the minerals produced from the lands of those complained against* or the proceeds thereof subject to the final disposition of such litigation."

Such language could only mean oil produced by an adjacent owner from a well wholly on his land, i. e., including oil produced by drainage from the adjacent land. During the thirty years since the statute was enacted, it has been applied or discussed in the following cases: Town of Refugio v. Strauch, Tex.Com.App., 29 S.W.2d 1041; Magnolia Petroleum Co. v. McClendon et al., 123 Tex. 10, 65 S.W.2d 484; Hum-

ble Oil & Refining Co. v. Railroad Comm., Tex.Civ.App., 85 S.W.2d 813; Railroad Comm. v. Gulf Production Co., Tex.Civ. App., 115 S.W.2d 505, 508; Edgar v. Stanolind Oil &. Gas Co., Tex.Civ.App., 90 S.W. 2d 656, writ refused; Murphy v. Turman Oil Co., Tex.Civ.App., 97 S.W.2d 485, 488; Gulf Production Co. v. Railroad Comm., Tex.Civ.App., 84 S.W.2d 359, 360. In such case cited the question was whether a land owner could enjoin the adjacent landowner from drilling his own land lest he drain oil from the complainants' land by a well wholly upon the drilling owner's own land. There was no question of subsurface trespass raised in any of said cases. In the case of Humble Oil & Refining Co. v. Railroad Comm., 85 S.W.2d 813, supra, it was held that the oil conservation laws passed since the statute was passed superseded or suspended the statute so far as the conservation laws were applicable.

■ We overrule appellants second point. The temporary restraining order had expired and become functus officio on August 3, 1949. Whether or not the court committed error with respect thereto is moot, and cannot here be considered at this time.

■ Appellants' third point complains that the court erred in ordering a directional survey.

The order complained of under this third point relates to the taking of evidence. Considered alone, it is merely interlocutory and so, is not appealable, and relief there against, if any, would have to be by a writ of mandamus. But it seems to us that appellees have so tied their application for the directional survey to their application for temporary injunction to aid and support such application as to have become an integral part of their application for temporary injunction. Anyway, we will resolve the benefit of the doubt in favor of appellants' appeal thereof in connection with their appeal of the order awarding the temporary injunction, which, as rendered by the court, seems to have been one. As so considered, the action of the trial court in ordering the directional survey could be denounced only if it were shown to be wrong as a matter of law or constituted an abuse of the court's discretion.

Rule 167, Texas Rules of Civil Procedure, provides: "Upon motion of any party showing good cause therefor and upon notice to all other parties the court in which an action is pending may order any party to * *. * permit the inspection * * * or photographing by or on behalf of the moving party, of any designated * * * objects or tangible things, * * * which constitute or contain evidence material to any matter involved in the action and which are in his possession, custody, or control. * * *"

The evidence showed that the survey of the well to determine the directional survey was accomplished by photographs. The person of a party to a suit is not property and his right of privacy stands on a different bottom from his right to conceal evidence which will support the cause of action of another; and the freedom of the person of a party to a suit from inspection to determine say, the extent of his injury, cannot be urged as an argument why his books or other property cannot be inspected when necessary or relevant. The third point is overruled.

■ We overrule appellants' point No. 4, complaining that the court erred in denying appellants' application for a jury on the question of whether a discovery should be ordered of the Hastings Oil Company No. 1 Mays Well, by making a subsurface directional survey thereof. We have heretofore considered the issue of discovery as though it were a part of appellees' application for an injunction for the reason stated in that connection. But here appellants present the issue in its true aspect, namely, as an interlocutory order of the court. As such, the issuance of the order was purely a judicial function. See Lorance v. State, Tex.Civ.App., 179 S.W.2d 1015, 1016.

■ Assuming, but not deciding, that it was error to permit the filing by appellees of an amendment setting up an alleged violation of a Railroad Commission Rule, and that the court had no jurisdiction to entertain such matter, such action did not constitute reversible error so far as this appeal

from the order of August 3, 1949, goes. Appellees' pleadings were sufficient to support the order appealed from disregarding the amendment.

The action of the court in overruling appellants' plea in abatement was an interlocutory judgment, and not here reviewable, and could not constitute reversible error here. See Magnolia Petroleum Co. v. State, Tex.Civ.App., 218 S.W.2d 855, 858. We overrule appellants' sixth point.

The granting or refusal of a temporary injunction is within the sound discretion of the trial court and is not reviewable upon appeal unless it clearly appears from the record that there has been an abuse of such discretion. Harris County v. Bassett, Tex.Civ.App., 139 S.W.2d 180, 182, writ refused. No abuse is here shown by the court's action in preserving the status quo until the final hearing. The judgment of the court is affirmed.

Affirmed.